**Jana M. ALIG–MIELCAREK, Ph.D., Plaintiff,**

v.

**Derrell L. JACKSON, Ed.D., Clark Atlanta University, Inc., and Dr. Sheila Gregory, Defendants.**

Civil Action No. 1:12–CV–2192–SCJ–JSA.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 16, 2012.

---

Stuart L. Brown, Ice Miller, LLP, Indianapolis, IN, for Plaintiff.

Jonathan Robert Poole, Mary M. Brockington, Strickland Brockington Lewis, LLP, Atlanta, GA, for Defendants.

### ORDER

JUSTIN S. ANAND, United States Magistrate Judge.

The above-captioned action is before the Court on the "Motion to Quash Subpoena or, in the Alternative, for a Protective Order" [1] ("Motion to Quash") filed by Defendant Clark Atlanta University, Inc. ("Clark Atlanta"). For the reasons discussed below, the Motion to Quash [1] is **GRANTED IN PART, DENIED IN PART.** Clark Atlanta's request to quash the subpoena [1–1] is **GRANTED,** but the request for a Protective Order [1–2] is **DENIED.**

## I. BACKGROUND

### A. *The Allegations in the Complaint*

This action arises out of a copyright infringement lawsuit pending in the Southern District of Ohio. The Amended Complaint, filed on June 20, 2011, alleges the following:

Plaintiff Jana M. Alig–Mielcarek, while obtaining her Ph.D. degree from the Ohio State University in 2003, wrote a doctoral dissertation entitled *"A Model of School Success: Instructional Leadership, Academic Press, and Student Achievement"* ("Dissertation"). Amend. Compl. at ¶ 40. She published her Dissertation on October 31, 2003, at which time it became publicly available, and she registered her copyright in the Dissertation with the United States Copyright Office on or about February 2, 2004. *Id.* at ¶¶ 43–44.

Defendant Derrell L. Jackson prepared his own dissertation while obtaining a graduate degree from Clark Atlanta University, entitled *"Teacher Perceptions of Principals' Leadership Influence on Ninth Grade Student Outcomes"* ("Jackson Dissertation"). *Id.* at ¶ 54. The Jackson Dissertation contains several excerpts taken from or derived from Plaintiff's Dissertation without her permission and without proper attribution. *Id.* at ¶¶ 58–64. Jackson obtained an Ed.D. degree from Clark Atlanta based on the allegedly infringing dissertation. *Id.* at ¶ 57. Jackson distributed the Jackson Dissertation through publicly available sources including the Clark Atlanta library, Digital Commons at Robert W. Woodruff Library, and Pro-Quest UMI Dissertation Publishing. *Id.* at ¶ 65. Defendant Gregory, who served as Jackson's academic faculty advisor during the preparation of the Jackson Dissertation, assisted Jackson with the preparation of the Jackson Dissertation and negligently allowed it to be published and distributed in violation of Clark Atlanta's Intellectual Property Policy. *Id.* at ¶¶ 67–74.

In January of 2011, Plaintiff discovered that Jackson had written and published a book titled *"Are Schools Creating a Permanent Underclass?"* ("the Jackson Book"). *Id.* at ¶ 88. Jackson copied significant and substantial portions of Plaintiff's Dissertation in the Jackson Book without permission or attribution. *Id.* at ¶¶ 89, 98–100. Jackson offers the Jackson Book for sale on active websites including www.derrelljackson.com and www.amazon.com. *Id.* at ¶ 91.

Clark Atlanta investigated Plaintiff's allegations from October of 2010 through February of 2011 and concluded that Jackson had in fact plagiarized the Dissertation. *Id.* at ¶ 105–06. Clark Atlanta recommended that Jackson's doctoral degree be revoked and that the Jackson Dissertation be removed from Clark Atlanta's libraries and AUC libraries. *Id.* at ¶¶ 107–08. However, as of June 20, 2011, none of this had happened. *Id.* at ¶¶ 107–08.

Plaintiff sued Clark Atlanta, Jackson, and Gregory, as well as Rathsi Publishing, LLC, and Project Focus, LLC, which allegedly helped prepare and distribute the Jackson Book. *Id.* at ¶¶ 25–30, 110–19. Plaintiff alleges that the Defendants infringed her copyright, in violation of 17 U.S.C. § 501, *et seq.,* engaged in unfair competition under the Lanham Act, 15 U.S.C. § 1501, *et seq.,* conducted deceptive trade practices under Ohio law in violation of Ohio Revised Code §§ 4165.02 and 4165.03, and also committed the common-law torts of unfair competition

and "palming off" under Ohio law. *Id.* at ¶ 31.

## B. *Plaintiff's Discovery Demands*

Clark Atlanta contends that, during the course of discovery, Plaintiff served 137 document requests pursuant to Fed.R.Civ.P. 34. Mot. Quash [1] at 2. Clark Atlanta agreed to produce 3,726 pages of documents, but objected to the requests to the extent they called for production of the educational records of current and former Clark Atlanta students. Mot. Quash [1] at 2. Clark Atlanta argues that producing such records would violate the Family Educational Rights and Privacy Act, which prohibits it from producing a student's educational records without written authorization from the student.

On May 7, 2012, Plaintiff served a subpoena on Clark Atlanta in this District which, according to Clark Atlanta, propounds the same 137 document demands (the "Subpoena"). *See* Def. Ex. A, attached to Mot. Quash. Clark Atlanta contends, and Plaintiff does not deny, that the Subpoena calls for production of the same documents which Clark Atlanta had previously agreed to produce in response to the Rule 34 document request, and the other categories to which Clark Atlanta had lodged objections. In other words, apparently instead of seeking to compel compliance with her document requests in the Southern District of Ohio, Plaintiff re-asserted those same requests in the form of a Rule 45 Subpoena, in this District.

On May 16, 2002, Clark Atlanta filed the Motion to Quash [1] in this Court, seeking to quash the Subpoena, or in the alternative, a Protective Order protecting it from alleged undue burden and expense and protecting its current and former students. The specific document requests as to which Clark Atlanta objects—and which are therefore the subject of this motion—are 27, 28, 34, 35, 38, 42, 43, 69, 74–76, 89, 90, 93, 94, 109, 112, 113, 115, 117, and 121. Motion to Quash [1] at 6–12.

## II. DISCUSSION

### A. *Timeliness of Plaintiff's Response*

Before discussing the merits, the Court must first address the odd procedural history of this matter. Defendant Clark Atlanta filed the Motion to Quash [1] on May 16, 2012. Pursuant to Local Rule 7.1 B, "[a]ny party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen (14) days after service of the motion." LR 7.1 B, NDGa. In addition, when service of a motion or other document is made by mail, Rule 6(d) of the Federal Rules of Civil Procedure adds three days after service to any deadline resulting from such service. *See* Fed.R.Civ.P. 6(d).

In this case, the Certificate of Service attached to the Motion to Quash indicates that Defendant served the motion on counsel for Plaintiff via U.S. mail. *See* Cert. of Service, attached to Mot. to Quash [1]. Accordingly, Plaintiff was required to file any response to the Motion to Quash, and serve it upon opposing counsel, on or before June 4, 2012. Plaintiff, however, did not file her response to the Motion to Quash with the Court until June 19, 2012, more than two weeks past the deadline. In addition, Plaintiff did not request any extension of time in which to file a response to the Motion to Quash, nor request leave of Court to accept the untimely filed response. Pursuant to Local Rule 7.1 B, a failure to file a response within the time period required indicates that there is no opposition to the motion. *See* LR 7.1 B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

The Court has difficulty understanding Plaintiff's failure to properly and timely defend its own subpoena, as Plaintiff herself affirmatively initiated this action in this Court. Plaintiff had other avenues by which to seek discovery from Clark Atlanta, since Clark Atlanta is actually a party to the lawsuit. Plaintiff could have—and apparently did—serve document requests to Clark Atlanta as a joined party in the case. Having done so, she could have sought a judicial order compelling compliance with those requests in the forum where the case is actually pending. Instead, faced with objections to her document requests, Plaintiff chose not to seek judicial relief in Ohio, apparently aban-

doned the discovery request, and then renewed the same original demands in the form of a Rule 45 Subpoena on Clark Atlanta, in this District. Then, having done all that, Plaintiff failed to defend her subpoena in a timely fashion.

Thus, the Motion to Quash is deemed unopposed by virtue of Plaintiff's violation of the Local Rules and can be granted on that ground alone. Nevertheless, the motion should also be granted on the merits. In this regard, the Court has carefully considered the Plaintiff's untimely response and finds, as explained below, that Defendant's motion should be granted.

### B. *Motion to Quash*

#### 1. Pertinent Legal Standards

■ Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party may obtain discovery regarding any non-privileged matter "that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* While it is not an unlimited license for fishing expeditions, this rule is to be broadly construed with a bias in favor of wide-open discovery. *See Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (the term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case"). In addition, all discovery is subject to the limitations of Rule 26(b)(2)(C), which states that the court must limit the extent of discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C).

■ Under Rule 45 of the Federal Rules of Civil Procedure, a person subject to a subpoena may file a written objection and seek to have the subpoena modified or quashed on the grounds that it fails to allow a reasonable time for compliance, requires a non-party to travel more than 100 miles to comply, requires disclosure of privileged or other protected materials not subject to any exception, or subjects a person to undue burden. Fed.R.Civ.P. 45(c)(2)(B), (c)(3)(A)(i)–(iv). The burden of establishing the existence of a privilege justifying non-disclosure rests with the party asserting that privilege. *Perry v. Wabash County Hosp.,* No. S90–377, 1991 WL 79569, at *2 (N.D.Ind. Feb. 25, 1991) *(citing In re Equitable Plan Co.,* 185 F.Supp. 57 (S.D.N.Y.1960)).

Clark Atlanta argues that educational records of individuals are protected and privileged under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), which provides in relevant part as follows:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless—

(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

(B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency.

20 U.S.C. § 1232g(b)(2).

■ The purpose of FERPA is to "assure parents of students ... access to their edu-

cation records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent." *Rios v. Read,* 73 F.R.D. 589, 597 (E.D.N.Y.1977). Although FERPA does not provide a privilege preventing disclosure of student records, it seeks to protect the confidentiality of educational records by threatening financial sanctions against those schools that adopt policies of releasing student records. *Id.* at 598; *see also See Bigge v. District School Bd. of Citrus Cty., Fla.,* No. 5:11–cv–210–Oc–10TBS, 2011 WL 6002927, at *1 (M.D.Fla. Nov. 28, 2011); *Ragusa v. Malverne Union Free School District,* 549 F.Supp.2d 288, 291–92 (E.D.N.Y.2008).

■ FERPA absolves schools that disclose educational records pursuant to a judicial order from sanctions. *Ragusa,* 549 F.Supp.2d at 291–92; *Rios,* 73 F.R.D. at 599; *see also* 20 U.S.C. § 1232g(b)(2)(B). Nevertheless, the "privacy violations" that result from any disclosure of education records protected by FERPA are "no less objectionable simply because release of the records is obtained pursuant to judicial approval unless, before approval is given, the party seeking disclosure is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Rios,* 73 F.R.D. at 599; *see also Ragusa,* 549 F.Supp.2d at 292.

Thus, when addressing objections to the disclosure of educational records, courts have permitted discovery only when the party requesting the records has met a "significantly heavier burden" to show that its interests in obtaining the records outweighs the significant privacy interest of the students. *See, e.g., Ragusa,* 549 F.Supp.2d at 293–94 (ordering disclosure of education records, after redaction of personally identifiable information regarding individual students, because records were deemed relevant with respect to whether the school's reasons for denying tenure to the plaintiff teacher were a pretext for age, national origin, and disability discrimination); *Nastasia v. New Fairfield Sch. Dist.,* No. 3:04 CV 925(TPS), 2006 WL 1699599, *1–2 (D.Conn. June 19, 2006) (compelling disclosure of records of similar complaints to those

made by the plaintiff because the information was "clearly relevant" to plaintiff's claims and the defendant's burden of production was "minimal"); *Davids v. Cedar Falls Cmty. Sch.,* No. C96–2071, 1998 WL 34112767, *3 (N.D.Iowa Oct. 28, 1998) (allowing disclosure of education records on the ground that the records would allow plaintiff to prove his allegations that his school "engaged in a practice of disparate discipline of minority and non-minority students"); *Rios,* 73 F.R.D. at 599 (determining that plaintiff demonstrated sufficient need for students' academic records and test results when it would be "impossible to prove" the alleged Title VI violations without such records).

### 2. The Document Demands In This Case

The Subpoena requests documents involving Jackson's matriculation at Clark Atlanta and his preparation and submission of his dissertation. *See* Mot. to Quash, Ex. A. Clark Atlanta contends that it has already agreed to produce 3,726 pages of documents that are responsive to the requests to the extent they involve Jackson's records, and it concedes that the records related to Jackson are relevant to the issues in this case. *See* Def. Br. [1] at 3. The Subpoena, however, also requests a wide variety of documents not related to Jackson specifically, including records involving other students at Clark Atlanta, without any limitation in time or scope. *See id.* Clark Atlanta thus objects on privacy grounds to the requests involving the records of students other than Jackson, and also objects to all of the listed requests as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

#### a. Documents Relating to Educational Records of Other Students

For example, the Subpoena requests "[a]ll documents concerning academic advising given to CAU students by Defendant Gregory," and "[a]ll documents concerning the review by Defendant Gregory of any dissertation of any CAU student." Mot. to Quash, Ex. A, Request Nos. 27, 28. Similarly, the Subpoena requests "[a]ll documents concerning academic advising given to CAU students by Dr. Trevor Turner," "[a]ll documents concerning the review by Dr. Trevor Turner of any

dissertation of any CAU student," "[a]ll documents concerning academic advising given to CAU students by Dr. Noran Moffett," and "[a]ll documents concerning the review by Dr. Noran Moffett of any dissertation of any CAU student." Mot. to Quash, Ex. A, Request Nos. 27, 28, 34, 35, 42, 43.[1] The Subpoena also seeks a wide variety of information relating to Clark Atlanta's specific use of plagiarism detection services, including, for example, "all documents concerning the use of Turnitin® plagiarism detection service by students or faculty members of CAU," and "all documents evidencing communications among and/or between any CAU faculty members and/or any member of the administration of CAU concerning use of the Turnitin® plagiarism detection service." Mot. to Quash, Ex. A, Request Nos. 93, 94, 109. These examples are illustrative of others objected to by Clark Atlanta.

Plaintiff argues that the requested records would be relevant to the issues in this action, including whether plagiarism and copyright infringement have been problems for Clark Atlanta in the past, whether Clark Atlanta was aware of "persistent" plagiarism and copyright infringement by its students in the past, and what actions Clark Atlanta has taken to prevent plagiarism and copyright infringement. Pl. Resp. [3] at 6–7. Plaintiff does not deny that her demands seek discovery of reams of educational records relating to other students. But she argues that FERPA does not prohibit this disclosure because "FERPA clearly anticipates that information protected by its statutory umbrella would be discoverable if required to be disclosed by a court order, as is the case here." *Id.* at 9.

■ The Court agrees with Clark Atlanta that these and other similar demands are substantially overbroad and, as currently drafted, are not justifiable, especially in light of FERPA. Plaintiff is correct that FERPA does not prohibit Clark Atlanta from complying with a judicial subpoena. But that does not end the inquiry. Plaintiff does not ad-

dress the significant privacy interests of nonparty students which underlie FERPA. And she does not acknowledge, much less meet, the "significantly heavier burden" placed on her under FERPA to establish a need for these records that outweighs the privacy interests of the affected students. *See Rios,* 73 F.R.D. at 598; *see also Bigge,* 2011 WL 6002927, at *2; *Ragusa,* 549 F.Supp.2d at 292.

The Court finds these requests substantially overbroad even without FERPA. As an example, the Court fails to see how all of the records relating to all academic advising or dissertation review, ever, by several Clark Atlanta educators—most of whom are not defendants—are reasonably calculated to lead to the discovery of admissible evidence in this case. Many of Plaintiff's demands are just this overbroad. That the records requested include nonparty educational records—which are entitled to greater protection for the benefit of the affected students, and impose reporting burdens on Clark Atlanta—render these overbroad demands even more untenable.

The Court does find some relevance to Plaintiff's requests for records relating to other instances of plagiarism or suspected plagiarism, and Defendants' use and knowledge of tools to detect plagiarism. To a point, such facts may help clarify Defendants' knowledge, and whether they were negligent or reckless in this case. But as currently drafted, without any temporal or other limitations, the demands are too broad. Plaintiff's demands are like a bulldozer that levels an entire hill in the hopes of finding some specks of gold. Again, that Plaintiff seeks to bulldoze nonparty academic records provides even more of a basis to sustain the objection.

### b. *Documents Related to the Development, Drafting, Revision, Etc. of Clark Atlanta Policies and Procedures*

■ Another major category of requests to which Clark Atlanta objects seek not just school policies and procedures, but all documents ever created relating in any way to the

---

1. The Subpoena originally demanded "[a]ll documents concerning any dissertation authored or submitted by any student at CAU." Mot. to Quash, Ex. A, Request No. 38. The Court need not rule on this demand, as Plaintiff states that she voluntarily withdraws it. Pl. Resp. [3] at 8, n. 2.

development and revision of those policies. These requests are also overbroad.

For example, the Subpoena requests "[a]ll documents relating to the development, drafting, revision, adoption, enactment, and publication of the degree requirements for the graduate school at CAU from which Defendant Darrell Jackson graduated." Mot. to Quash, Ex. A, Request No. 25. Plaintiff is apparently requesting every document related to this information from the time that Clark Atlanta was founded. She does not explain how records related to degree requirements for any time period before the relevant time period in this case would be reasonably calculated to lead to the discovery of admissible evidence.

The Subpoena also requests "[a]ll documents relating to the development, drafting, revision, adoption, enactment and publication of CAU's Student Handbook," "[a]ll documents relating to the development, drafting, revision, adoption, enactment and publication of CAU's Code of Conduct," and "[a]ll documents relating to the development, drafting, revision, adoption, enactment and publication of CAU's Campus Cultural Creed." Mot. to Quash, Ex. A, Request Nos 74–76. These fail too. Again, Plaintiff does not limit these requests to any arguably relevant time period. She apparently requests every document ever created related to this information. Clark Atlanta states, and it would stand to reason, that requiring it to find and produce every record related to the development and drafting of those documents, without any limitation as to time period, would be burdensome.

Plaintiff argues that these documents are relevant to establishing the standard of care for intellectual honesty and noninfringement that Clark Atlanta holds out to the world. Pl. Resp. [3] at 7. The problem, however, is that what Plaintiff demands goes far beyond what is reasonably calculated to secure potentially relevant documents. Clark Atlanta contends that it has produced the actual Student Handbooks, Code of Conduct, and Campus Cultural Creeds in effect during the time at issue in this action. Plaintiff does not explain—and the Court cannot discern—how the entire legislative histories of those policies including drafts and revisions dating back for 25 years add anything. What does it matter how the Campus Cultural Creed was worded 20 years ago and how it has been revised in all the years since, long before the events at issue here? How does it shed any light on Clark Altanta's standard of care at the time the Jackson Dissertation was published, to obtain the Code of Conduct—and all non-published interim drafts of the Code of Conduct—from a decade or two earlier? Plaintiff fails to explain why she is entitled to all of this.

In other words, while there may be some relevance to the "standard of care," the Court agrees with Clark Atlanta that it is sufficient to produce the actual policies, codes and other documents themselves. Demanding more—at least to the extent of Plaintiff's currently-worded demand—is not reasonably calculated to lead to the discovery of admissible evidence and is not justified in light of the burden.

In sum, the listed requests are overbroad and unduly burdensome, and are not narrowly tailored to lead to the discovery of admissible evidence. As discussed above, Plaintiff has made many requests that are not limited to the relevant time period at issue, nor has she made any effort to limit her request to those records containing information relevant to her claims in this case. Furthermore, to the extent Plaintiff demands educational records of nonparty students, the Court also finds that Plaintiff has failed to meet her "significantly heavier burden" under FERPA to establish that her purported need for the educational records requested outweighs the privacy rights of the students who are the subject of the records protected by FERPA. For all of these reasons, and because of Plaintiff's failure to even properly oppose the motion, the Court **GRANTS** Clark Atlanta's request to quash document requests 27, 28, 34, 35, 42, 43, 69, 74–76, 89, 90, 93, 94, 109, 112, 113, 115, 117, and 121 of the Subpoena [1–1].[2]

---

2. To the extent Plaintiff substantially narrows some of these demands—such that they function more like a shovel and not a bulldozer—the Court might decide otherwise. But as currently

### III. CONCLUSION

For all the reasons discussed above, the Motion to Quash [1] is **GRANTED IN PART, DENIED IN PART.** Clark Atlanta's request to quash the subpoena [1–1] is **GRANTED,** but the request for a Protective Order [1–2] is **DENIED** as moot. The Clerk

is **DIRECTED** to terminate the reference to the undersigned.

worded the demands at issue must be quashed to the extent they seek documents beyond what Clark Atlanta has agreed to provide.

In granting the Motion to Quash, the Court also relies on Clark Atlanta's representation that it will or has produced the subset of responsive documents that it identified in its brief, including

Jackson's educational records, and the pertinent policies of the University. Nothing in this Order should be construed as denying Plaintiff discovery of those documents, as the Court assumes, pursuant to Clark Atlanta's representations, that those documents have or will be produced.